## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BRYAIN YOUNG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 22-cv-1278-MMM** |
| | ) | |
| **LEONTA JACKSON,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MERIT REVIEW ORDER – AMENDED COMPLAINT</u>

Plaintiff, proceeding *pro se*, filed an Amended Complaint under 42 U.S.C. § 1983 alleging that his procedural due process rights were violated while incarcerated at Pontiac Correctional Center. (Doc. 10). This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ALLEGATIONS

Plaintiff files suit against Warden Leonta Jackson, Major Travis Bantista, C Brubaker, Sergeant John Doe, and Correctional Officers Delia, Mary Cerda, James Berry, Rusty Collins, and Brian Howard.

1

Plaintiff was placed under investigation and moved to segregation on July 31, 2020. He alleges that he was never informed why he was placed under investigation. He submitted grievances but did not receive a response. On August 19, 2020, Plaintiff was released from segregation and sent back to protective custody in south house cell 635. Plaintiff did not have his property when he was released from segregation. While using the kiosk, Plaintiff borrowed beard trimmers and a blanket from another inmate. Defendant Collins "commented on him doing this in front of him." (Doc. 10 at 7). Plaintiff apologized and was locked back in his assigned cell.

On August 20, 2020, Plaintiff asked Defendant Collins to use the kiosk again, but Defendant Collins allegedly denied his request because "Plaintiff had been trading and trafficking the day before." *Id*. Plaintiff explained that he borrowed the items because he had no property. Plaintiff asked to speak with a Segreant or a Lieutenant. Approximately thirty minutes later, an unidentified Sergeant, Defendant John Doe, came to Plaintiff's cell to speak with him. Plaintiff thinks his name might be Segreant Gross and states that he was short, stocky, and had a mohawk. Plaintiff told Defendant John Doe that Defendant Collins had denied him access to the kiosk. According to Defendant John Doe, Defendant Collins had said Plaintiff requested a crisis team. Plaintiff told Defendant John Doe that he did not need a crisis team; however, Defendant John Doe ordered Plaintiff to cuff up so he could be escorted to see a crisis team member. Plaintiff alleges this was a ruse to get him out of his cell.

After being placed in handcuffs, Plaintiff was escorted out of his cell and placed in a holding tank/cell. About forty-five minutes later, Defendants Berry and Delia from internal affairs came to question Plaintiff. Defendant Berry told Plaintiff a suspicious medicine cup with a piece of paper measuring approximately one inch was found in Plaintiff's cell and the paper "presumptively" tested positive for synthetic cannabinoids. Plaintiff responded that the paper did

not belong to him, as he had recently moved into the cell. Defendant Berry informed Plaintiff that he was being placed in segregation, which Plaintiff claims was done in retaliation for the grievances he filed and his inability to cooperate with the internal affairs investigation. Plaintiff inquired about the crisis team, but Defendant Berry informed him no one from the crisis team was coming to speak with him.

Later, Plaintiff learned that while he was in the holding cell/tank, Defendants Collins and Howard shook down his cell and found the paper in the medicine cup. Yet, Defendant Berry wrote the disciplinary report and marked Defendant Delia as a witness, which Plaintiff claims was further proof of retaliation.

Plaintiff was placed in segregation and served with a disciplinary report charging him with "drugs and drugs paraphernalia" and for "violating state or federal laws." *Id.* at 11. Plaintiff alleges that he was never read his Miranda rights at the time.

Plaintiff alleges that he submitted a witness request listing correctional officer Marek, who is not named as a party, to inquire whether he performed a shakedown on the cell prior to Plaintiff being moved into the cell. Plaintiff also requested camera footage to show no prior shakedown had occurred.

Plaintiff alleges that he sent a witness request to Defendants Collins and Howard by placing the request in the institutional mail. Plaintiff states that he later learned they issued him a disciplinary report for "contraband and or unauthorized property for beard trimmers in his cell." *Id.* at 12. Plaintiff claims that this disciplinary report also heightened the need for camera footage to show that the events did not occur as claimed and that Defendants acted in retaliation.

An Adjustment Committee hearing on the various disciplinary reports was held on August 27, 2020, before Defendants Bantista and Cerda. Plaintiff alleges that Defendants Bantista and

3

Cerda did not call any of his witnesses, acknowledge his written statement, or review camera footage. The Adjustment Committee concluded that Plaintiff's witness request was untimely and insufficient because he did not list Defendant Collins' first name.

Plaintiff was found guilty and sentenced to four months in segregation, placed on C-grade for four months with commissary restrictions and audio/visual restrictions, and was not allowed to have contact visits for six months. Plaintiff alleges that the basis for finding him guilty was the observation of the reporting employee who claimed to have performed a Narc II field test on the piece of paper, which presumptively tested positive for synthetic cannabinoids. Plaintiff had requested to see the results of the Narc II field test, but his request was denied. Plaintiff states that the final summary decision was based on drugs and drug paraphernalia, but there was no mention of the results of the Narc II field test. In other words, Plaintiff claims that Defendants Bantista and Cerda found Plaintiff guilty solely on the word of Defendant Berry, as they never investigated or reviewed the alleged test results.

Approximately six months later, Plaintiff was called out of his cell and read his Miranda rights by Defendant Berry. Plaintiff was then informed that the paper from the medicine cup was sent to an outside lab and tested positive. Plaintiff reiterated to Defendant Berry that the paper was not his. Plaintiff again requested to see the results of the Narc II field test and camera footage. Defendant Berry told Plaintiff he was not entitled to review the results. Plaintiff asked Defendant Berry why he served four months in segregation if the test results had only recently come back. Defendant Berry allegedly responded that all of it would have been avoided if Plaintiff had not filed a grievance the first time he had been placed under investigation and had cooperated with them when he was in the holding tank/cell.

Plaintiff claims that he wrote several letters to Defendant Warden Leonta Jackson informing him of the incident and the retaliatory motivation behind it. After the Adjustment Committee refused to allow Plaintiff to view the Narc II field test results and prepare a defense, Plaintiff sent additional letters to Defendant Jackson outlining the due process violations. Nevertheless, Defendant Jackson signed off on the Adjustment Committee's decision. Plaintiff claims this is not the first time he had an issue regarding requests for camera footage. Plaintiff claims that this demonstrates "either an express policy or accepted practice that the warden is either condoning or turning a blind eye to." *Id.* at 15.

Plaintiff also alleges that Defendant Brubaker, the grievance officer, refused to investigate the incident and the alleged violation of Plaintiff's due process rights.

Plaintiff claims that he was retaliated against because his phonebook containing personal information was taken, along with other miscellaneous items and property. He does not state who was responsible for taking his property. Plaintiff also alleges that, even after serving his sentence in segregation, "he is still suffering adverse effects from internal affairs," as he was denied job assignments, placed in a filthy cell with a dirty mattress, denied electronics, not allowed visits or access to the phone, and prohibited from going to yard, commissary, and law library. *Id.* at 16.

## ANALYSIS

Plaintiff first claims that his due process rights were violated while he was in segregation from July 31, 2020, until August 19, 2020, because he was deprived of his property and no one from Internal Affairs interviewed him. Plaintiff filed his Complaint on August 24, 2022. (Doc. 1). Therefore, the Court finds that this claim is barred by the two-year statute of limitations. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("[W]hen the existence of a valid

affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit.").

Plaintiff alleges that he was found guilty at an Adjustment Committee hearing on August 27, 2020, and was denied due process because the Committee did not call his witnesses, acknowledge his written statement, or review the camera footage. Plaintiff complains that he was placed in segregation before test results confirming the presence of cannabinoids were available and that he was not allowed to view the test results. Plaintiff does not allege a loss of good time credits or plead that he was held under atypical conditions while in segregation. He pleads only that he was placed in segregation for four months, assigned to C-grade for four months, faced commissary restrictions and audio/visual restrictions for four months, and was denied contact visits for six months.

The review of a procedural due process claim requires a two-part analysis: whether the plaintiff was deprived of a protected liberty or property interest, and if so, what process was due. *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996). In other words, if a constitutional right is identified, then procedural due process must be provided. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1020 (7th Cir. 2000). A due process violation may be implicated if "the defendants deprived [plaintiff] of a liberty interest by imposing an 'atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *McCoy v. Atherton*, 818 F. App'x 538, 541 (7th Cir. 2020) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Court must examine not just the severity, but the duration of the complained-of conditions. *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997); *see also Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (characterizing up to 90 days in segregation a relatively short period, depending on the conditions imposed).

6

The four-month duration of segregation alone is insufficient to rise to the level of a Fourteenth Amendment violation. *See Lekas v. Briley*, 405 F.3d 610, 613 (7th Cir. 2005) (90 days in segregation with loss of contact visits, loss of telephone and commissary privileges, and the inability to participate in programs did not implicate protected liberty interests); *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (inmate not deprived of liberty interest when he spent six months in segregation behind a steel door with a confrontational cellmate and had only weekly access to shower and prison yard). Extreme conditions in segregation could implicate due process considerations, but Plaintiff has not alleged that conditions were atypical, even after the Court gave Plaintiff an opportunity to amend. *See Williams v. Brown*, 849 F. App'x 154, 156 (7th Cir. 2021) (only lengthy period of segregation and harsh conditions will violate due process). Therefore, the Court finds that Plaintiff fails to plead a due process claim against Defendants.

Plaintiff's Complaint is DISMISSED with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b) and 28 U.S.C. § 1915A. In its prior Merit Review Order, the Court dismissed Plaintiff's Complaint without prejudice and gave Plaintiff leave to amend. (Doc. 6). The Court stated that Plaintiff failed to plead that he was held under atypical conditions while in segregation and that only a lengthy period of segregation and harsh conditions violate due process. *Id.* The Court gave Plaintiff leave to amend, but Plaintiff failed to include any allegations regarding the conditions of segregation in his Amended Complaint. Therefore, the Court finds that any further amendment would be futile.

**IT IS THEREFORE ORDERED:**

1.      Plaintiff's Amended Complaint is dismissed with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. This case is therefore closed. The Clerk is directed to enter a judgment pursuant to Fed. R. Civ. P. 58.

2.      Plaintiff's Motions to Request Counsel [9], [11] are DENIED.

3.      This dismissal may count as one of Plaintiff's three allotted strikes pursuant to 28 U.S.C. § 1915(g). The Clerk of Court is directed to record Plaintiff's strike in the three-strike log.

4.      Plaintiff must still pay the full docketing fee of $350 even though his case has been dismissed. The agency having custody of Plaintiff shall continue to make monthly payments to the Clerk of Court, as directed in the Court's prior order.

5.      If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* MUST identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (stating that an appellant should be allowed to submit a statement of the grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith"); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good-faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED:   4/18/2023

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge